State of California Department of
Corrections and Rehabilitation
Mule Creek State Prison
**RODGER ALLEY**, Plaintiff
CDCR Registry No. T36335
Housing Loc: A4-209
P.O. Box 409020
Ione, CA 95640

In Propria Persona

**FILED**

**Apr 14, 2022**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

RODGER ALLEY,

        Plaintiff,

    v.

ALLEN SAELEE; RANDY DENNISTON;
JORGE ESTUPINAN; ALEKSANDR
TSUSHKO; JESSICA GAMEZ; WESLEY
SEARS; LINDY ABLES; BLAKE
MCTAGGART; KAYLA MCTAGGART;
DEREK ENDICOTT; ZACHARY
WARREN; MARLENE YOUNG; SEAN
MEDINA; D. CLAYS; JAMES QUIRING;
STACI WOODS; and SHELLY OEHLER,
in their individual capacities,

        Defendants.

Case No.  2:22-cv-661-DB (PC)

**COMPLAINT FOR DAMAGES**

1. **Violation of Civil Rights
   42 U.S.C. § 1983 – Excessive Force**

2. **Violation of Civil Rights
   42 U.S.C. § 1983 – Failure to Protect**

3. **Violation of Civil Rights
   42 U.S.C. § 1983 – Denial of Medical
   Care**

4. **Violation of Civil Rights 42 U.S.C. §
   1983 – Civil Conspiracy**

5. **Cal. Civ. Code § 52.1**

6. **Battery**

7. **Intentional Infliction of Emotional
   Distress**

8. **Negligence**

9. **Medical Negligence**

10. **Violation of Government Code § 845.6**

**DEMAND FOR JURY TRIAL**

1

Comes now Plaintiff Rodger Alley, and for cause of action against the defendants and each of them, complains as follows:

## INTRODUCTION

1.      Correctional officers employed by the California Department of Corrections and Rehabilitation ("CDCR") regularly exact extrajudicial punishment on inmates in their custody. Supervisory officials, specifically, the Warden (Patrick Covello) has failed to properly train, supervise and discipline correctional officers for such conduct, and as a result there is a culture within Mule Creek State Prison ("MCSP") of excessive use of force. Plaintiff Rodger Alley was beaten by a gang of correctional officers assigned to guard him and now seeks damages for his violation of his constitutional rights.

## JURISDICTION AND VENUE

2.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of law, of rights secured by the Constitution of the United States and Acts of Congress. This Court has jurisdiction to grant Plaintiff's request for declaratory relief pursuant to the Declaratory Judgement Act, 28 U.S.C. §§'s 2201 and 2202. Further, this Court has authority to grant the requested injunctive relief under 28 U.S.C. § 1343(3); the requested compensatory punitive, and nominal damages under 42 U.S.C. § 1983 and 28 U.S.C. § 1343; and Plaintiff's prayer for costs, including reasonable attorney's fees, under 28 U.S.C. § 1920 and 42 U.S.C. § 1988.

3.      As Plaintiff's state claims arise out of a common nucleus of facts, the Court has supplemental jurisdiction over them pursuant to 28 U.S.C § 1367.

4.      Venue lies in the Eastern District of California, the judicial district in which the claims arose, pursuant to 28 U.S.C. § 1391 (1)-(2). Plaintiff respectfully requests a jury trial on the allegations giving rise to this action.

## EXHAUSTION OF PRE-LAWSUIT PROCEDURES

5.      On January 14, 2021, Plaintiff filed an inmate appeal regarding the use of force by a gang of correctional officers that took place on January 13, 2021. On or about January 20, 2021,

2

1   the Appeals Coordinator's Office assigned number 79785 to Plaintiff's appeal. Before Plaintiff

2   filed his appeal, correctional staff refused to timely issue all relevant incident reports to hinder

3   attempts at exhaustion, specifically, provide the names of involved staff. The only names that

4   were provided were defendants A. Saelee and R. Denniston. Plaintiff remembered Saelee and

5   Denniston because they were assigned to Plaintiff's assigned housing unit (Unit 4). Because

6   Plaintiff was not provided the necessary information, he filed the complaint as follows:

> "On 1-13-21, I was assaulted by officers A. Saelee and R. Denniston in A4 section
> dayroom. Officers used excessive unneeded force and slammed me to the ground.
> I then started to yell for help but was only met by a number of other officers who
> continued to punch, kick and knee me in the head, back and legs. I continued to
> yell for help due to the pain I was in from my head to my feet. The handcuffs and
> leg restraints were put on so tight that I could not feel my feet or hands and still
> today I was not given medical treatment or care. I have bruises on my legs, both
> ankles and wrists. I have a busted lip and an injury to my left ear from a punch or
> kick to the left ear by MCSP A Yard officers, yet they used so much force that
> they knocked me out for a moment or two (See A Yard video footage). I was left
> in a cage for 5 hours with no water or food or restroom. The leg restraints and
> handcuffs left me unable to move or breathe properly. I am unsure the number of
> times I was hit by officers but I'm sure there may be witnesses in B and C sections
> of A4. Officers did not protect me from harm and intended to inflict pain and
> injury on me for using the phone on my assigned time. I was let out of my cell to
> use phones and showers for the lower section on 1-13-2021. After I used the
> phone, I was on my way back to my cell when I was attacked by floor officers and
> then drug to the Sally Port where the attack continued until I was put on a stretcher
> due to my inability to move on my own due to the assault and shackles. See Fac A
> video footage from date in question. I am a non-violent programming person in
> prison who was hurt and harmed by officers."

7

8

9

10

11

12

13

14

15

16

17

18

19

20      When Plaintiff was finally provided the necessary incident report he submitted another

21   appeal/complaint against defendants J. Estupinan, A. Tsushko, J. Gamez, W. Sears, L. Ables, B.

22   McTaggart, K. McTaggart, D. Endicott, Z. Warren, M. Young, S. Medina, D. Clays, J. Quiring,

23   S. Woods and S. Oehler. The Appeals Coordinator's Office refused to respond to the properly

24   submitted complaint which effectively rendered the remainder of the exhaustion process

25   unavailable. Prison officials' failure to respond to a properly filed grievance makes remedies

26   "unavailable" and therefore excuses a failure to exhaust. Sapp v. Kimbrell, 623 F.3d 813, 822 (9th

27   Cir. 2010).

28      Plaintiff exhausted administrative remedies as to inmate appeal log number 79785.

6.     Plaintiff filed governmental tort claims with the State of California as a pre-requisite to the state law claims alleged herein. Plaintiff's tort claims were rejected.

## PARTIES

7.     Mr. Rodger Alley ("Plaintiff") was, at all relevant times, a prisoner of the State of California in the custody of CDCR at MCSP.

8.     On information and belief, Allen Saelee was, at all relevant times, employed by the CDCR as a correctional officer at MCSP, assigned to A Facility, Unit 4 as a Floor Officer. Saelee has a significant history of misconduct towards the inmate population at MCSP. At all times mentioned, Saelee was acting under the color of State law and is sued in his individual capacity.

9.     On information and belief, defendant Randy Denniston was, at all relevant times, employed by the CDCR as a correctional officer at MCSP, assigned to A Facility, Unit 4 as a Floor Officer. Denniston was Saelee's partner during the assault upon the Plaintiff. Denniston has a significant history of misconduct towards the inmate population at MCSP. At all times mentioned, Denniston was acting under the color of State law and is sued in his individual capacity.

10.     On information and belief, defendant Jorge Estupinan was, at all relevant times, employed by the CDCR as a correctional officer at MCSP, assigned to A Facility Search and Escort (S&E). Estupinan was a responding officer on the date in question. Estupinan has a significant history of misconduct towards the inmate population at MCSP that includes the use of excessive force. At all times mentioned, Estupinan was acting under the color of State law and is sued in his individual capacity.

11.     On information and belief, defendant Aleksandr Tsushko was, at all relevant times, employed by the CDCR as a correctional officer at MCSP, assigned to A Facility. Tsushko was a responding officer on the date in question. Tsushko has a significant history of misconduct towards the inmate population at MCSP that includes a significant history of utilizing excessive force, failing to protect inmates from assaults by correctional staff and filing false incident reports to cover up assaults. Several civil suits have been filed against Tsushko where supervisors are

4

1    very well aware of his inclination to assault inmates, yet supervisors allow him to act with

2    impunity. At all times mentioned, Tsushko was acting under the color of State law and is sued in

3    his individual capacity.

4           12.    On information and belief, defendant Jessica Gamez was, at all relevant times,

5    employed by the CDCR as a correctional officer at MCSP, assigned to A Facility, Unit 5 as a

6    Floor Officer. Gamez was a responding officer on the date in question. Gamez has a significant

7    history of misconduct towards the inmate population at MCSP that includes a significant history

8    of excessive force, failure to protect inmates from assaults by correctional staff and filing false

9    reports to cover up assaults. Supervisors are aware of Gamez's inclination to assault inmates, yet

10   supervisors allow her to act with impunity. At all times mentioned, Gamez was acting under the

11   color of State law and is sued in her individual capacity.

12          13.    On information and belief, defendant Wesley Sears was, at all relevant times,

13   employed by the CDCR as a correctional officer at MCSP, assigned to A Facility. Sears was a

14   responding officer on the date in question. Sears has a significant history of misconduct towards

15   the inmate population at MCSP. At all times mentioned, Sears was acting under the color of State

16   law and is sued in his individual capacity.

17          14.    On information and belief, defendant Lindy Ables was, at all relevant times,

18   employed by the CDCR as a correctional officer at MCSP, assigned to A Facility, Unit 4 as a

19   Control Booth Officer. Ables was a responding officer on the date in question. Ables left her post

20   to write incident reports in the Program Office during the assault. At all times mentioned, Ables

21   was acting under the color of State law and is sued in her individual capacity.

22          15.    On information and belief, defendant Blake McTaggart was, at all relevant times,

23   employed by the CDCR as a correctional sergeant at MCSP, assigned to A Facility. McTaggart

24   responded during the incident on the date in question. McTaggart has a significant history of

25   misconduct towards the inmate population at MCSP that includes the use of excessive force,

26   failure to protect inmates from assaults by correctional staff and filing false reports to coer up

27   assaults and any other misconduct by staff. Supervisors are aware of McTaggart's misconduct,

28   yet they allow him to act with impunity. At all times mentioned, McTaggart was acting under the

1    color of State law and is sued in his individual capacity.

2        16.    On information and belief, defendant Kayla McTaggart was, at all relevant times,

3    employed by the CDCR as a correctional sergeant at MCSP, assigned to A Facility. McTaggart

4    responded during the incident on the date in question. McTaggart has a significant history of

5    misconduct towards the inmate population at MCSP that includes the failure to protect inmates

6    from assaults by correctional staff and filing false reports to cover up assaults and other

7    misconduct by staff. Supervisors are aware of McTaggart's misconduct, yet they allow her to act

8    with impunity. At all times mentioned, McTaggart was acting under the color of State law and is

9    sued in her individual capacity.

10       17.    On information and belief, defendant Derek Endicott was, at all relevant times,

11   employed by the CDCR as a correctional officer at MCSP, assigned to A Facility. Endicott was a

12   responding officer on the date in question. Endicott has a significant history of misconduct

13   towards the inmate population at MCSP. At all times mentioned, Endicott was acting under the

14   color of State law and is sued in his individual capacity.

15       18.    On information and belief, defendant Zachary Warren was, at all relevant times,

16   employed by the CDCR as a correctional officer at MCSP, assigned to A Facility, Unit 1 as a

17   Floor Officer. Warren was a responding officer on the date in question. Warren has a significant

18   history of misconduct towards the inmate population at MCSP that includes a significant history

19   of excessive force against inmates, failure to protect inmates from assaults by correctional staff

20   and filing false reports to cover up assaults. Supervisors are aware of Warren's acts of

21   misconduct, yet they allow him to act impunity. At all times mentioned, Warren was acting under

22   the color of State law and is sued in his individual capacity.

23       19.    On information and belief, defendant Marlene Young was, at all relevant times,

24   employed by the CDCR as a correctional officer at MCSP, assigned to A Facility Search and

25   Escort (S&E). Young was a responding officer on the date in question. At all times mentioned,

26   Young was acting under the color of State law and is sued in her individual capacity.

27       20.    On information and belief, defendant Sean Medina was, at all relevant times,

28   employed by the CDCR as a correctional officer at MCSP, assigned to A Facility, Unit 5. Medina

6

1  was a responding officer on the date in question. Medina has a significant history of misconduct

2  towards the inmate population at MCSP that includes a significant history of excessive force

3  against inmates, failure to protect inmates from assault by correctional staff and filing false

4  reports to cover up assaults. Supervisors are aware of Medina's acts of misconduct, yet they allow

5  him to act with impunity. At all times mentioned, Medina was acting under the color of State law

6  and is sued in his individual capacity.

7      21.    On information and belief, defendant D. Clays was, at all relevant times, employed

8  by the CDCR as a correctional sergeant at MCSP, assigned to A Facility. In his capacity as a

9  supervisor, he allowed correctional staff, including defendants Endicott and Estupinan to lock

10  Plaintiff in a standing only holding cage with hand and leg restraints for five (5) hours causing

11  pain and suffering while detained in the Program Office and allowed correctional and medical

12  staff to refuse Plaintiff medical attention to hide injuries suffered from the assault. Clays has a

13  significant history of misconduct towards the inmate population at MCSP that includes the failure

14  to protect inmates from assaults by correctional staff, filing false reports to cover up assaults and

15  retaliation. Several lawsuits have been filed against Clays for misconduct. Supervisors are aware

16  of Clays' misconduct, yet they allow him to act with impunity. At all times mentioned, Clays was

17  acting under the color of State law and is sued in his individual capacity.

18      22.    On information and belief, defendant James Quiring was, at all relevant times,

19  employed by the CDCR as a correctional Lieutenant at MCSP, assigned to A Facility. In his

20  capacity as a supervisor, he allowed correctional staff, including defendants Clays, Endicott and

21  Estupinan to lock Plaintiff in a standing only holding cage with hands and leg restraints for five

22  (5) hours causing pain and suffering while detained in the Program office and allowed

23  correctional and medical staff to refuse Plaintiff medical attention to hide injuries suffered from

24  the assault. Quiring has a significant history of misconduct towards the inmate population at

25  MCSP that includes the failure to protect inmates from assaults by correctional staff, filing false

26  reports to cover up assaults or other misconduct, and retaliation. Several lawsuits have been filed

27  against Quiring for misconduct. Supervisors are aware of Quiring's misconduct, yet they allow

28  him to act with impunity. At all times mentioned, Quiring was acting under the color of State law

1   and is sued in his individual capacity.

2         23.    On information and belief, defendant Staci Woods was, at all relevant times,

3   employed by the CDCR as a LVN at MCSP, assigned to A Facility. In her capacity as a LVN,

4   Woods interviewed Plaintiff and refused to document all injuries, specifically, hands and legs

5   from tightened restraints that cut into skin. Woods refused to provide any further medical

6   attention to injuries she did document on CDCR 7219 Form on directions by correctional staff to

7   hide the assault upon the Plaintiff. Woods has a significant history of misconduct against the

8   inmate population at MCSP, specifically, falsifying medical records and incident reports (CDCR

9   7219's) indicating that the subject inmate did not suffer any injuries from assaults by correctional

10  staff to cover up misconduct. Supervisors are aware of Woods' inclination to falsify medical

11  records, yet they allow her to act with impunity. At all times mentioned, Woods was acting under

12  the color of State law and is sued in her individual capacity.

13        24.    On information and belief, defendant Shelly Oehler was, at all relevant times,

14  employed by the CDCR as a Registered Nurse (RN) at MCSP, assigned to the medical facility

15  (TTA). In her capacity as a RN, Oehler falsified medical documents reflecting that defendant B.

16  McTaggart suffered an injury on his chin from an alleged "head butt" from the Plaintiff to deflect

17  Plaintiff's claims that correctional staff assaulted him and to bring false criminal charges against

18  Plaintiff. At all times mentioned, Oehler was acting under the color of State law and is sued in her

19  individual capacity.

20        25.    Defendants Saelee, Denniston, Estupinan, Tsushko, Gamez, Sears, Ables, B.

21  McTaggart, K. McTaggart, Endicott, Warren, Young, Medina, Clays, Quiring, Woods and Oehler

22  were charged by law and were responsible with supervision, care, security, Plaintiff's safety,

23  medical care, and were responsible for ensuring that Plaintiff's constitutional rights were not

24  violated. It was the duty and responsibility of these defendants to supervise, monitor, protect,

25  maintain safety and security, to not use excessive force, to protect inmates from assaults by

26  correctional staff, to report wrongful conduct by correctional staff, to not falsify incident reports

27  to cover up misconduct, to not engage in conspiratorial conduct, and provide medical care.

28

8

**PRELIMINARY ALLEGATIONS**

26.    At all times relevant to the facts alleged herein, defendants were duly appointed, qualified and acting officers, employees, and/or agents of CDCR, employed as such by CDCR, and acting within the course and scope of their employment and/or agency and under color of State law. Each of the defendants caused and is responsible for the unlawful conduct and resulting by, *inter alia*, personally participating in the conduct, or acting jointly and in concert with others who did so by authorizing, acquiescing, condoning, acting, omitting or failing to take action to prevent the unlawful conduct by promulgating or failing to promulgate policies and procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with deliberate indifference to Plaintiff's rights, to initiate and maintain adequate supervision, security, training, compliance with responsibilities and duties, and staffing; by failing to maintain proper adequate policies, procedures and protocols; and by ratifying and condoning the unlawful conduct performed by agents and correctional officers and employees under their direction and control.

27.    Whenever and wherever reference is made in this Complaint to any act by defendants, such allegations and references shall also be deemed to mean the acts and failures to act of each Defendant individually, jointly or severally.

**FACTUAL ALLEGATIONS**

28.    On January 13, 2021, Mule Creek State Prison (MCSP) was on modified program due to the COVID-19 outbreak.

29.    At approximately 12:00 pm, Unit 4 staff released Plaintiff for telephone and shower program.

30.    As Plaintiff was walking towards his living quarters after his phone call, defendants Denniston and Saelee approached him where Denniston roughly grabbed his right arm and began to place restraints very tightly, cutting into the skin.

31.    As a result of the tight handcuffs, Plaintiff began to yell in pain asking defendant Denniston to loosen up the cuffs.

32.    In response to Plaintiff's screams, both defendants Denniston and Saelee slammed him to the ground and immediately began punching and kicking his body and face. Plaintiff's

9

1  hands were still handcuffed behind his back while he was beaten on the floor. At times Plaintiff

2  was pulled by his hands in order to move his body.

3      33.    As Plaintiff squirmed to try to avoid the blows, one of the defendants kneeled

4  down placing his knee on his back, stopping him from moving.

5      34.    Plaintiff never resisted throughout the beating. Multiple times throughout the

6  beating, defendants Denniston and Saelee yelled at Plaintiff to stop resisting. On at least one

7  occasion, Plaintiff responded, "I'm not resisting." Plaintiff was in and out of consciousness

8  during the beating.

9      35.    Defendants Denniston and Saelee, and other correctional staff at MCSP, have a

10  practice of audibly making statements to the effect of "stop resisting" while they engage in acts of

11  excessive force against inmates in custody, regardless of the fact that the inmates were not

12  resisting staff in any manner. Staff at MCSP employ this tactic so that witnesses would hear the

13  fabricated justification for the use of force.

14      36.    Defendants Denniston and Saelee proceeded to spray Plaintiff's face and body

15  with bursts of Pepper Spray, which interfered with his abilities to breathe. As Plaintiff gasped for

16  breath, he complained to defendants Denniston and Saelee that he could not breathe. In response,

17  Denniston said something to the effect of "if you can talk, you can breathe...I don't give a fuck if

18  you choke, if you die." The spray, which contacted the open wounds on Plaintiff's face, caused

19  him great pain.

20      37.    Defendants Denniston and Saelee, and other correctional staff at MCSP have a

21  practice of unnecessarily spraying Pepper Spray in the face and eyes of inmates who had been

22  beaten by staff and were immobilized. Staff at MCSP engaged in such spraying to create the

23  appearance of resistance by inmates, and also, to inflict additional pain and suffering on inmates,

24  particularly those with open wounds on their faces.

25      38.    At some point during the beating by defendants Denniston and Saelee, defendants

26  Tsushko, Estupinan, Medina, Gamez, Ables, Young, Warren, Endicott, B. McTaggart and K.

27  McTaggart arrived at the scene of the assault while the assault was still ongoing. Upon their

28  arrival, neither Tsushko, Estupinan, Medina, Gamez, Ables, Young, Warren, Endicott, B.

McTaggart nor K. McTaggart acted to prevent Denniston or Saelee from continuing to punch and kick Plaintiff. Rather, Tsushko, Estupinan, Media, Gamez, Endicott and B. McTaggart joined in the assault by punching and kicking Plaintiff, and Tsushko provided active assistance after B. McTaggart retrieved leg irons for them to use in further restraining Plaintiff.

39.    Defendants Sears, K. McTaggart, Ables, Young and Warren refused to take any reasonable actions to prevent Denniston, Saelee, Tsushko, Estupinan, Medina, Gamez, Endicott and B. McTaggart from beating the Plaintiff.

40.    During the beating, several inmates housed in sections B and C were yelling out of their cells, "leave him alone. You guys are going to kill him!"

41.    In response to protests by B and C section inmates, Denniston, Saelee, Tsushko, Estupinan, Medina, Gamez, Endicott and B. McTaggart grabbed Plaintiff by his cuffed hands and feet and dragged him into the rotunda out of sight of inmates so that they no longer witnessed the assault.

42.    Once in the rotunda, Tsushko, Denniston, Saelee, Estupinan, Medina, Gamez, Endicott and B. McTaggart proceeded to punch and kick the Plaintiff knocking him in and out of consciousness. Plaintiff was still in leg and hand restraints.

43.    After several minutes of being punched and kicked, plaintiff began to pour blood out of his mouth, ear, hands and legs. Once defendants Tsushko, Denniston, Saelee, Estupinan, Medina, Gamez, Endicott and B. McTaggart saw blook they stopped their assault.

44.    As a consequence of this prolonged physical assault, Plaintiff suffered serious physical injuries including a long gash on his ear, cuts on hands and ankles, black eyes, numerous bruises and knots throughout his body.

45.    Immediately after the assault, Plaintiff was placed on a wheelchair and escorted to A Facility Decontamination Cell.

46.    Defendant Woods is a LVN employed by the CDCR at MCSP who examined Plaintiff immediately after the assault while in was confined in the holding cell. Despite the obvious injuries to Plaintiff's ear, eyes, wrists, legs and body, Woods denied Plaintiff's request for further medical attention and denied to document all injuries on the CDCR 7219 Form,

11

specifically, eyes, facial injuries and cuts to the wrists and legs from restraints to cover up the assault.

47.     As a result of the assault, Plaintiff suffered severe mental and emotional distress in the form of the fear and anguish he endured following the assault during which he was in severe pain and suffering and could not breath while confined in the small holding cell for five (5) hours with restraints still on his hand and feet and denied medical care. Plaintiff also continues to suffer physical, mental and emotional distress as a result of the assault in the form of continuing headaches, the nightmares that he continues to endure, the sleeping problems he continues to endure, and his general lack of trust in persons with whom he interacts.

48.     During the five (5) hours confined with restraints in the small holding cell, Plaintiff begged both defendants Endicott and D. Clays (Facility Sergeant) to remove the restraints where they both laughed. All circulation was cut off on both of Plaintiff's hands and feet and he had difficulty breathing.

49.     During the five (5) hours confined with restraints in the small holding cell, Plaintiff begged defendant Quiring (Facility Lieutenant) to remove the restraints because they were cutting into his wrists and legs where Quiring stated, "C'mon, it doesn't hurt that bad. Be a man." Plaintiff then asked Quiring for medical attention where he stated, "you already had medical attention," referencing the examination from defendant Woods.

50.     Sergeant R. Kassis conducted a use-of-force interview of the Plaintiff pursuant to prison rules and policies which was video recorded by sergeant J. Vina. During the interview, Plaintiff reported the assault.

51.     After Plaintiff's interview, defendants Saelee, Denniston, Estupinan, Tsushko, Gamez, Sears, Ables, B. McTaggart, K. McTaggart, Endicott, Warren, Young, Medina, Clays, Quiring and Woods met and discussed how they would respond to the beating of the Plaintiff. Corresponding to an already existing custom by correctional staff at MCSP, the group agreed to characterize the beating of the Plaintiff by stating that he initiated the confrontation with the defendants. In particular, the defendants conspired to create a fictitious story that Plaintiff resisted staff and was drunk or on drugs.

12

52.     Defendant B. McTaggart corresponded to Plaintiff's use-of-force interview by reporting to the medical facility and conspiring with defendant Oehler to produce documentation reflecting that McTaggart suffered an injury to the chin from a head-butt by the Plaintiff.

53.     In truth and fact, Plaintiff's hands and feet were cuffed throughout the beating in Unit 4; Plaintiff never "head-butted" anybody; a urinalysis was never obtained from the Plaintiff to support allegations that he was under the influence of alcohol or drugs; and Plaintiff never resisted the defendants.

54.     After creating this false and fabricated story, defendants Saelee, Denniston, Estupinan, Tsushko, Gamez, Sears, Ables, B. McTaggart, K. McTaggart, Endicott, Warren, Young, Medina, Quiring, Woods and Oehler wrote false Supplemental Reports in support of Plaintiff's internal charges (Rules Violation Report (RVR)) and criminal charges, accusing him of Battery on a Peace Officer (RVR Log Number 7056270) and Battery on Non-Confined Person by Prisoner, a felony (Superior Court Case No. 21 CR 30585).

55.     The Amador County Superior Court dismissed all charges pending against the Plaintiff that were set out in the Information.

**DAMAGES**

56.     As a proximate result of defendants' conduct, Plaintiff suffered severe pain and physical injuries. As a further proximate result of defendants' conduct, Plaintiff suffered severe emotional and mental distress, fear, terror, anxiety, depression, humiliation, embarrassment, and loss of his sense of security, dignity, and pride.

57.     All defendants acted outside the scope of their jurisdiction and without authorization of law, and separately and in concert, the aforementioned acts of the defendants, and each of them, was willful, wanton, malicious and oppressive, with reckless disregard or with deliberate indifference with the intent to deprive Plaintiff of his rights and privileges, and did in fact violate the aforementioned rights and privileges, entitling Plaintiff to exemplary and punitive damages in an amount to be proven at the trial of this matter.

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**Excessive Force**

**(Eighth and Fourteenth Amendments, 42 U.S.C. § 1983)**

**(Against Defendants A. Saelee, R. Denniston, J. Estupinan, A. Tsushko,**

**J. Gamez, B. McTaggart, D. Endicott and S. Medina)**

58.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

59.     Defendants, acting under color of State law and through their policies, practices and customs, deprived Plaintiff of rights, privileges, and immunities secured by the Constitution and laws of the United States under the Eighth and Fourteenth Amendments, by subjecting him through their deliberate indifferences to excessive force and tightened handcuffs resulting in deep cuts to his wrists and ankles.

60.     As a direct and proximate cause of the aforementioned acts of defendants, Plaintiff was injured as set forth above.

61.     Plaintiff's injuries entitle him to compensatory and punitive damages according to proof as to the individual defendants.

**SECOND CLAIM FOR RELIEF**

**Failure to Protect**

**(Eighth and Fourteenth Amendments, 42 U.S.C. § 1983)**

**(Against Defendants J. Quiring, D. Clays, W. Sears, K. McTaggart, L. Ables,**

**M. Young and Z. Warren)**

62.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

63.     Defendants, acting under color of State law and through their policies, practices and customs, deprived Plaintiff of rights, privileges and immunities secured by the Constitution and the laws of the United States under the Eighth and Fourteenth Amendments, by failing to protect him from the use of excessive force, including subjecting Plaintiff to tightened handcuffs

14

1   resulting in deep cuts to his wrists and ankles, through their deliberate indifferences.

2        64.    As a direct and proximate cause of the aforementioned acts of defendants, Plaintiff

3   was injured as set forth above.

4        65.    Plaintiff's injuries entitle him to compensatory and punitive damages according to

5   proof as to the individual defendants.

6   <center>**THIRD CLAIM FOR RELIEF**</center>

7   <center>**Denial of Medical Care**</center>

8   <center>**(Eighth and Fourteenth Amendments, 42 U.S.C. § 1983)**</center>

9   <center>**(Against Defendants S. Woods, A. Saelee, R. Denniston, J. Estupinan, A. Tsushko, J.**</center>

10  <center>**Gamez, W. Sears, L. Ables, B. McTaggart, K. McTaggart, D. Endicott,**</center>

11  <center>**Z. Warren, M. Young, S. Medina, D. Clays and J. Quiring)**</center>

12       66.    Plaintiff incorporates by reference each and every allegation contained in the

13  preceding paragraphs as if set forth fully herein.

14       67.    Defendants, acting under color of State law and through their policies, practices

15  and customs, deprived Plaintiff of rights, privileges, and immunities secured by the Constitution

16  and laws of the United States under the Eighth and Fourteenth Amendments, by subjecting him,

17  or through their deliberate indifferences allowing others to subject him, to the denial of medical

18  care to hide injuries and cover up the assault on January 13, 2021.

19       68.    As a direct and proximate cause of the aforementioned acts of defendants, Plaintiff

20  was injured as set forth above.

21       69.    Defendants' denial to provide medical care for Plaintiff's injuries entitle him to

22  compensatory and punitive damages according to proof as to the individual defendants.

23  <center>**FOURTH CLAIM FOR RELIEF**</center>

24  <center>**Civil Conspiracy Under Federal Law, 42 U.S.C. § 1983**</center>

25  <center>**(Against all Defendants)**</center>

26       70.    Plaintiff incorporates by reference each and every allegation contained in the

27  preceding paragraphs as if set forth fully herein.

28       71.    Plaintiff asserts his Fourth Cause of Action for Conspiracy under federal law to

<center>15</center>

1  violate his Civil Rights.

2      72.     Defendants entered into a civil conspiracy and agreement to violate Plaintiff's civil

3  rights by engaging in the conduct, acts, and omissions alleged herein by unlawfully refusing to

4  properly investigate the use of force, covering up the use of force by alleging that Plaintiff was

5  resisting and was under the influence of alcohol or drugs, a urinalysis was not conducted,

6  defendant B. McTaggart conspired with defendant Oehler to falsify medical documents reflecting

7  that McTaggart suffered injuries to his chin from a head butt from the Plaintiff countering Battery

8  charges against the Plaintiff, falsifying Incident Reports, bringing false internal and criminal

9  charges against the Plaintiff, denying medical treatment to hide injuries and assault, subjecting

10  Plaintiff to cruel and unusual punishment which includes the assault and leaving Plaintiff in a

11  holding cage for five (5) hours with restraints. In addition to the conduct alleged above, said

12  conspiracy and agreement is evidenced by the fact, *inter alia*, that the defendants: (a) ordered,

13  directed, supervised, authorized, aided, abetted, approved, ratified and/or deliberately and

14  knowingly failed, refused and/or refrained from intervening in or stopping the wrongful conduct

15  alleged herein; and/or (b) engaged in conduct alleged herein that was unlikely to have been

16  undertaken without an agreement. None of the individually named defendants would have

17  unreasonably violated Plaintiff's constitutional rights but for an agreement with other individually

18  named defendants.

19      73.     Defendants are legally responsible for and indeed proximately and legally caused

20  the damages herein for the reasons alleged above and incorporated herein by reference.

21                        **FIFTH CLAIM FOR RELIEF**

22                **Violation of California Civil Code § 52.1**

23                        **(Against all Defendants)**

24      74.     Plaintiff incorporates by reference each and every allegation contained in the

25  preceding paragraphs as if set forth fully herein.

26      75.     The United States Constitution, Amendments Eight and Fourteen, and the

27  California Constitution, Article I, guarantee the right of persons to be free from excessive force.

28  Defendants, by engaging in the wrongful conduct alleged herein, denied this right to Plaintiff,

1 thus giving rise to a claim for damages pursuant to California Civil Code § 52.1.

2      76.     As a direct and proximate cause of the aforementioned acts of defendants, Plaintiff

3 was injured as set forth and is entitled to statutory damages under California Civil Code § 52.1,

4 compensatory and punitive damages according to proof as to the individual defendants.

5                         **SIXTH CLAIM FOR RELIEF**

6                               **Battery**

7      **(Against Defendants A. Saelee, R. Denniston, J. Estupinan, A. Tsushko,**

8            **J. Gamez, B. McTaggart, D. Endicott and S. Medina)**

9      77.     Plaintiff incorporates by reference each and every allegation contained in the

10 preceding paragraphs as if set forth fully herein.

11     78.     Defendants battered Plaintiff, causing his injuries as hereinabove alleged and

12 entitling him to compensatory and punitive damages according to proof as to the individual

13 defendant.

14     79.     As a direct and proximate cause of the aforementioned act of the defendants,

15 Plaintiff was injured as set forth above.

16                        **SEVENTH CLAIM FOR RELIEF**

17               **Intentional Infliction of Emotional Distress**

18                         **(Against all Defendants)**

19     80.     Plaintiff incorporates by reference each and every allegation contained in the

20 preceding paragraphs as if set forth fully herein.

21     81.     Defendants' conduct was extreme and outrageous, and caused Plaintiff to sustain

22 severe emotional distress, all to Plaintiff's damage as hereinabove alleged.

23     82.     As a direct and proximate cause of the aforementioned acts of defendants, Plaintiff

24 was injured as set forth above.

25     83.     Plaintiff's injuries entitle him to compensatory and punitive damages according to

26 proof as to the individual defendants.

27

28

# EIGHTH CLAIM FOR RELIEF

## Negligence

### (Against all Defendants)

84.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

85.     The individual defendants did not exercise ordinary care to ensure that Plaintiff would not suffer excessive force, that includes tightened handcuffs, while in their custody, thus negligently breaching a duty owed to him and proximately causing his injuries as hereinabove alleged.

86.     As a proximate result thereof, Plaintiff has been damaged as hereinabove alleged, and is entitled to compensatory and punitive damages according to proof as to the individual defendants.

# NINTH CLAIM FOR RELIEF

## Medical Negligence

### (Against Defendants S. Woods, J. Quiring, D. Clays, B. McTaggart, K. McTaggart, A. Saelee, R. Denniston, J. Estupinan, A. Tsushko, J. Gamez, W. Sears, L. Ables, D. Endicott, Z. Warren, M. Young and S. Medina)

87.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

88.     While Plaintiff was under the sole and exclusive care of defendants, defendants, and each of them, acting within the scope and course of their employment negligently, carelessly, unskillfully (including a complete failure to abide by the established local operating procedures to conduct a direct mental health evaluation when an inmate is in need of possible CTC/MHCB referral and/or emergency CTC admission), and with deliberate indifference cared for, failed to supervise and monitor, failed to follow up with, and wholly failed to provide timely medical care for the Plaintiff. Defendants negligently, carelessly, unskillfully, and with deliberate indifference failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as defendants.

18

89.     Defendants Quiring and Clays failed to supervise, train, and monitor their subordinates to maintain proper supervision, classification and staffing and to timely refer Plaintiff for medical care, and to ensure the care and treatment necessary was provided.

90.     As a legal, direct and proximate result of the aforementioned negligence, carelessness, unskillfulness, and deliberate indifference of defendants, and each of them, Plaintiff was not adequately treated for his injuries, resulting in pain and suffering.

**TENTH CLAIM FOR RELIEF**

**Violation of California Government Codes §§'s 844.6 and 845.6**

**(Against Defendants S. Woods, J. Quiring, D. Clays, A. Saelee, R. Denniston,**

**J. Estupinan, A. Tsushko, J. Gamez, W. Sears, L. Ables, B. McTaggart,**

**K. McTaggart, D. Endicott, Z. Warren, M. Young and S. Medina)**

91.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

92.     Pursuant to California Government Code §§'s 844.6 and 845.6, these defendants had a duty to monitor, check and respond to the persons under their custody, supervision and control.

93.     Defendants, particularly Woods, knew or had reason to know that Plaintiff was in need of further medical care while incarcerated at MCSP and failed to take reasonable action to summon or provide such care.

94.     As a result of defendants' breach of said duty to take reasonable action to summon such medical care, Plaintiff suffered damages as set forth herein and incorporated herein by reference.

19

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully request that this Court:

1.  Award Plaintiff general, special and compensatory damages in an amount to be proven at trial.

2.  Award Plaintiff punitive damages against individually named defendants, and each of them, for their extreme and outrageous conduct in complete disregard for the rights of the Plaintiff.

3.  Award Plaintiff statutory damages and/or attorney's fees against all defendants as allowed by 42 U.S.C. § 1988 and California Civil Code § 52.1.

4.  Expunge falsified Rules Violation Report with Log Number 7056270.

5.  Award Plaintiff $150.00 for each day spent in Administrative Segregation based on false charges to cover up the assault.

6.  Grant Plaintiff such other and further relief as the Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury in this matter, pursuant to FRCP 38(a).


Dated: *March 30, 2022*                    Respectfully submitted,


_____

Rodger Alley, Plaintiff

20

Rodger Alley CDCR No. T36335
Mule Creek State Prison
P.O. Box 409020 (A4-209)
Ione, CA  95640

April 3, 2022

Office of the Clerk
U.S. District Court
Eastern District of California
501 I Street, Suite 4-200
Sacramento, CA  95640

Re:  Rodger Alley v. Allen Saelee, et. al.
     U.S. District Court, Eastern District of California
     Case No. NOT ASSIGNED, NEW FILING

Dear Clerk:

    I write this letter in regards to the afore-mentioned case
matter.

    Due to COVID-19, the prison's law library has been closed
for the last two years and I have no access to E-filing.

    Therefore, I request that this office file the enclosed
Complaint.

    Thank you for your time and consideration.


Sincerely,


Rodger Alley, Plaintiff

# UNITED STATES DISTRICT COURT

Eastern District Court of California

Keith Holland, Clerk

Jenna Nelson, Chief Deputy

### CLERK'S NOTICE

☐ **REPLY TO:**
Divisional Office
2500 Tulare St. #1-500
Fresno, California 93721

☒ **REPLY TO:**
Office of the Clerk
501 I Street #4-200
Sacramento, CA 95814

TO:
Rodger Alley T36335
Mule Creek State Prison
Housing Loc: A4-209
P.O. Box 409020
Ione, CA 95640

Case Number: | n/a

RE:  Pleadings and/or Correspondence received on :   | 4/6/2022

☒  **E-FILING** : Pursuant to Standing Order of the Chief District Judge entitled "In Re: Procedural Rules for Electronic Submission of Prisoner Litigation filed by Plaintiffs Incarcerated", the document(s) can not be filed because your institution participates in the e-filing program with the court. Per the Standing Order, the document(s) is (are) returned unfiled and must be filed under E-Filing procedure with the Librarian/Litigation Coordinator. When filing documents under E-Filing procedures, please include this document (Clerk's Notice) with the e-filing documents.

Thank you for your future attention to this matter.

| CP | | 4/6/2022 |

Deputy Clerk       Date